UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

NATHAN JOHN HUIRAS,

        Plaintiff,

                                    Case No. 22-cv-1109-pp

    v.

KRISTIN CAFFERTY, JESSICA ANNE GRUNDBERG,
NICOLE HUIRAS and RACINE COUNTY,

        Defendants.

**ORDER DENYING AS MOOT DEFENDANTS' MOTIONS TO DISMISS
(DKT. NOS. 3, 26, 28), DENYING AS MOOT PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION (DKT. NO. 15), DENYING AS MOOT
DEFENDANTS GRUNDBERG AND HUIRAS'S MOTION FOR ATTORNEY'S
FEES (DKT. NO. 17), DENYING AS MOOT PLAINTIFF'S MOTION TO STAY
CASE (DKT. NO. 38) AND DISMISSING CASE FOR LACK OF SUBJECT
MATTER JURISDICTION**

       On September 23, 2022, the plaintiff—representing himself—filed a

complaint alleging "False Arrest and False Imprisonment without Probable

Cause" against defendants Kristin Cafferty and Racine County, and "Using

Meritless and Misrepresenting Claims to Deprive [Him] of Constitutional Rights

under the Color of State Law" against defendants Jessica Grundberg and Nicole

Huiras.[1] Dkt. No. 1 at 6–7. The plaintiff sues under 42 U.S.C. §1983. Id. at 2,

6–7. The allegations in the complaint relate to a divorce and custody case in

---

[1] This is the second federal lawsuit the plaintiff has filed regarding his on-going
state-court family law case. He filed the first suit, Case no. 22-cv-575, on May
16, 2022, four months before filing the instant suit. The first suit also named
Cafferty and Grundberg as defendants, as well as several other people with
roles in the state-court suit. The court dismissed that case on November 9,
2022. Huiras v. Cafferty, et al., Case No. 22-cv-575 (E.D. Wis.).

1

Wisconsin state court (Racine County Case No. 2021FA000592). The plaintiff also seeks injunctive relief in the form of a request that the court dismiss the state court case. Dkt. No. 15. The four defendants all have filed motions to dismiss the complaint. Dkt. Nos. 3, 26, 28. Defendants Grundberg and Huiras filed a motion for attorney's fees. Dkt. No. 17.

## I.    Procedural History

On September 23, 2022, the plaintiff filed the complaint. Dkt. No. 1. On October 7, 2022, defendants Jessica Grundberg and Nicole Huiras filed a motion to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(6) and 41(b), dkt. no. 3, along with a supporting brief, dkt. no. 4. The plaintiff filed an objection to the motion, dkt. no. 9, and Grundberg and Huiras filed a reply brief, dkt. no. 12.

On October 20, 2022, the plaintiff filed a motion for preliminary injunction under Fed. R. Civ. P. 65, asking the court "to DISMISS the underlying action contained in Wisconsin Case 2021FA000592 in Racine County." Dkt. No. 15. The plaintiff stated that "[t]his injunction would make all orders made by the underlying action null and void as most of them are an obvious violation of [his] constitutional rights." Id. The plaintiff asserts that "[i]f the underlying action is not dismissed, [he] will undoubtedly suffer further irreparable injury" because "[t]hey will continue to threaten to put [him] in jail every time [he] question[s] a 'temporary' and unlawful court order that violates [his] fundamental liberty interests." Dkt. No. 16 at 3.

On October 24, 2022, defendants Grundberg and Huiras filed a motion for attorney's fees. Dkt. No. 17. On November 7, 2022, defendant Racine County filed a motion to dismiss the complaint under Fed. R. Civ. P. 12(b)(6). Dkt. No. 26. On November 10, 2022, defendant Kristin Cafferty filed a

2

combined motion to dismiss the complaint under Rule 12(b)(6) and response to the plaintiff's motion for preliminary injunction, dkt. no. 28, and a supporting brief, dkt. no. 29. The plaintiff opposed the two motions to dismiss, dkt. nos. 33, 34, and the defendants filed reply briefs, dkt. nos. 35, 36. The plaintiff then filed an opposition to those reply briefs. Dkt. No. 37.

On January 4, 2023, the plaintiff filed a motion to stay the case "pending a final decision on Wisconsin Court of Appeals Case 2022AP001731 . . . titled . . . 'In re the finding of contempt in: In re the marriage of: Nicole Huiras, Petitioner-Respondent v Nathan Huiras, Respondent-Appellant.'" Dkt. No. 38. Grundberg and Huiras opposed that motion, dkt. no. 39, and the plaintiff filed a reply brief in support, dkt. no. 41.

## II.    Complaint

The plaintiff has named as defendants Judge Kristin Cafferty (whom he describes as "a Title IV-D contractor official of family cases in Racine County"), Nicole Huiras (the mother of the plaintiff's children and the petitioner in the state court case), Jessica Grundberg (Nicole Huiras's attorney in the state court case) and Racine County. Dkt. No. 1. The plaintiff's claims relate to Racine County Case No. 2021FA000592. Id. at 1. In his "Statement of Claim," the plaintiff asserts that he was "wrongfully imprisoned under the Color of State of Wisconsin Law on a meritless and misrepresenting claim made by Nicole Huiras and Jessica Grundberg in sworn and signed affidavits." Id. The plaintiff alleges that Judge Cafferty "convicted [him] of 'nonsummary' contempt . . . and sentenced [him] to 30 days in the Racine County Jail within minutes after the conviction." Id. The plaintiff contends:

> I was accused of a "nonsummary" contempt with the criminal element of harassment in the accusation. I was charged and convicted to a triable fact with no trial, and sentenced to 30 days in jail with no purge conditions without any opportunity to provide

3

witnesses for testimony. I was not allowed to testify and admit evidence to support my defense. It was only a last-minute plea by myself with the judge where she put a $1500 purge condition on the contempt charge because I insisted with Kristin Cafferty that she must have purge conditions according to the law.

Id.

The plaintiff goes on to allege that he was "falsely imprisoned on September 21st, 2022 where it took 8 hours to process the purge on an electronically signed court order for jail custody." Id. The complaint questions why it took "8 hours for a signed court order to get to the jail for [the plaintiff] to sign a bond and pay $1500 to leave the jail[.]" Id. He asserts that his First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendment rights have been violated:

My constitutional rights to free speech have been violated. I have 1st amendment right to say that I am going to petition the courts to whoever I want to say that to and it is not a crime. My 8th amendment constitutional rights have been violated with this cruel and unusual punishment and unnecessary fines and fees. My 5th and 14th amendment rights to due process were violated with there being no trial for a triable fact. Also, my 6th amendment right to a jury trial was violated. And finally my 4th amendment right to be secure in my medical privacy has been violated.

Id. at 1–2. The plaintiff brings these claims under 42 U.S.C. §1983. Id. at 2.

The complaint asserts a series of facts. Dkt. No. 1 at 3–5. The plaintiff states that on July 15, 2021, the state-court case was opened when defendants "Nicole Huiras and Jessica Grundberg petitioned to remove custody and care from [him] and [his] biological offspring without clear and convincing evidence." Id. at 3. The plaintiff contends that since the state case was opened, he has "made several peaceful attempts with Nicole Huiras to see [his] children and was denied all attempts by the mother except if [he] were to drive over one hour to Illinois and see [his] children I [sic] the hostile environment of her parent's

4

home." Id. at 4. The plaintiff states that "[d]uring these 'supervised' visits [Nicole Huiras] and her parents would harass [him] with a cell phone camera and Nicole Huiras sat there with a notebook taking notes of everything [he] was doing to antagonize" him. Id.

The plaintiff asserts that "[o]n August 26, 2021 all custody and care between the plaintiff and his biological offspring were taken away without any clear and convincing evidence" and that "[n]o specific findings of fact were made by Racine County." Id. The plaintiff states that "[s]ince Wisconsin Case 2021FA00592 was opened [he] filed several motions in an attempt to increase placement of [his] children" but that all of these attempts "were denied by Kristin Cafferty for no evidentiary reason." Id. The plaintiff argues that Judge Cafferty merely "stated that 'The allegations are too powerful for me to modify placement'" and that Judge Cafferty "found no specific finding of fact as to why [the plaintiff] lost care and custody of [his] children." Id.

The plaintiff describes a "color of law violation" he served upon all parties involved in the state court case:

> On or near February 14th, 2022 my process server legally and peacefully served all parties to the case including Kristin Cafferty a Color of Law Violation. I simply asked the parties to stop violating my constitutional rights under the color of state law. The parties of this case alleged that the act of legal process service was harassment and they filed for restraining orders.
>
> On February 16th, 2022 I asked Kristin Cafferty to put her wet ink signature on the color of law violation documents. Kristin Cafferty refused to sign the documents legally served upon her.

Dkt. No. 1 at 4.

The plaintiff states that on or near February 16, 2022, "all child contact was removed between [him] and [his] children for no evidentiary reason" and that "[t]he contents of the order signed by Kristin Cafferty state no specific

findings of fact as to why [he] lost child contact." Id. The plaintiff asserts that Judge Cafferty only stated the following "in the order proposed by Jessica Grundberg":

> "The temporary order on contact and placement is modified as follows. Respondent's contact with the minor children and his supervised placement with the minor children are suspended until further order of the Court.."

> "..Respondent is warned that failure to follow Court orders, including failure to undergo the previously ordered psychological evaluation with Dr. Alison Kravit, could result in a finding of contempt. The hearing on the Motion(s) for Contempt is scheduled for March 1, 2022 at 11:00 a.m. Respondent agreed to accept service of the contempt motion(s) via e-filing and U.S. Mail."

Id. (italics omitted).

The plaintiff avers that he did complete a psychological evaluation with Dr. Alison Kravit around March 1, 2022, and that "her conclusion was that 'Mr. Huiras's Mental Health does not preclude him from parenting.'" Id. He says that around April 25, 2022, Judge Cafferty "denied her [presumably Kravit's] court ordered evaluation to be admitted into evidence" and "insisted that another evaluation needs to be performed so she ordered another psychological evaluation for the father by Dr. David Thompson." Id. The plaintiff alleges that Judge Cafferty ordered the plaintiff to "turn all medical records over to Dr. David Thompson and . . . to make them available to the other parties of the case." Id. The plaintiff asserts that "[t]his violated [his] 4th amendment right to privacy and also violated HIPPA [sic] under the color of state law." Id. According to the plaintiff, he completed three hours of personality questions and tests at Dr. David Thompson's office on July 11, 2022, and another three hours on July 25. Id. at 5. The plaintiff contends that "Dr. David Thompson said to [him] in [their] meeting that after showing [him] the results of his tests he does not see any mental health issues that preclude [the plaintiff] from parenting [his]

6

children." Id. The plaintiff also states that on August 8, his "attorney objected to the order that forced [him] to sign medical authorizations to provide all of [his] medical records to all parties" in the state court case. Id.

The complaint asserts that on September 16, 2022, "Nicole Huiras filed a meritless claim for harassment via a sworn and signed affidavit where [the plaintiff] sent an Our Family Wizard message that contained the following language stated by" him: "While injuring the children you have also stripped me of my dignity and defamed my character by making false statements about my mental health. There will be civil, PEACEFUL, and legal recovery for these damages." Dkt. No. 1 at 5 (emphasis in original). See also Dkt. No. 9-1 at 3–5; Dkt. No. 9-2. The plaintiff argues that based on this affidavit, Nicole Huiras's attorney Jessica Grundberg "proposed a criminal contempt order based on multiple meritless claims for [the plaintiff] to be committed to Racine County Jail for 30 days with no purge conditions." Dkt. No. 1 at 5. The plaintiff states that at the September 21, 2022 hearing, "Nicole Huiras did not appear in court in person and was not made available to testify in person for cross-examination for the misrepresenting affidavit that she submitted to the court making a meritless allegation that led to [the plaintiff] being falsely imprisoned." Id. The plaintiff contends that during this September 21 hearing, he "objected to signing documents that would violate [his] right to medical privacy and Kristin Cafferty told [him] that I she [sic] knows [he's] under duress and she does not care if [he's] under duress." Id. The plaintiff alleges that Judge Cafferty "told [him] if [he does] not sign the medical authorizations then [he] will go to jail" and that he "signed these medical documents under the fear and threat of the defendants." Id.

The complaint states that at the September 21, 2022 hearing, Judge Cafferty found the plaintiff "guilty of nonsummary contempt of court with the criminal elements of harassment without letting [him] testify or to find witnesses to testify for [his] side of the story." Dkt. No. 1 at 5. The plaintiff provides the following details:

> I asked for a jury and [Judge Cafferty] denied my request. I asked for a harassment injunction hearing, and she denied my right to due process. She initially orally ordered me to jail for 30 days with no purge conditions and alleged that the order was for Civil Contempt. Nicole Huiras and Jessica Grundberg misrepresented me raising a triable issue of fact in harassment, and I was given no trial and imprisoned by Kristin Cafferty without probable cause depriving me of my constitutional right to due process under the Color of State of Wisconsin Law.

Id. The plaintiff describes what occurred when he was taken into custody:

> On September 21st, 2022 I was taken into jail custody near 12:30 pm. I was stripped, searched and put until [sic] a holding cell with as many as 8 people in a very small and filthy, dirty room for over 8 hours. I did not eat and was not allowed to get my attorney's phone number from my wallet.

Id.

Under the "Cause of Action" section, the complaint asserts claims of "False Arrest and False Imprisonment without Probable Cause" against defendants Kristin Cafferty and Racine County, Wisconsin. Dkt. No. 1 at 6. The complaint asserts a claim of "Using Meritless and Mispresenting Claims to Deprive [the plaintiff] of Constitutional Rights under the Color of State Law" against defendants Jessica Grundberg and Nicole Huiras. Id. at 6–7. The complaint requests the following relief:

1. Trial by jury on all issues triable by jury.

2. Compensatory damages, to be determined by a jury.

3. Punitive monetary damages, to be determined by a jury.

8

4. A determination by this Court that the Defendants have violated the Constitutional rights of the Plaintiff, pursuant to 28 U.S.C. § 2201.

5. An injunction, pursuant to 28 U.S.C. § 2202, prohibiting the Defendants from further bad faith and meritless and misrepresenting claims and convictions of the Plaintiff.

6. Plaintiff's costs of this suit.

7. Such other relief as this court deems just, proper, and equitable.

Id. at 7–8.

## III.    The State Court Case

A review of the publicly available docket shows that on July 15, 2021, a summons and petition were issued in In re the Marriage of Nicole Huiras and Nathan Huiras, Racine County Circuit Court Case No. 2021FA000592 (available at https://wcca.wicourts.gov). The presiding judge is Kristin M. Cafferty. The petitioner is defendant Nicole Huiras and the respondent is the plaintiff. It appears that the plaintiff is currently represented by Attorney Felicia Owen and Nicole Huiras is represented by Jessica Anne Grundberg. Id. The case remains pending; a trial is scheduled for March 20-24, 2023. Id.

The docket reflects that during a contempt hearing on July 1, 2022, Judge Cafferty found the plaintiff in contempt for violating court orders by engaging in harassment. Id. Judge Cafferty warned the plaintiff that "there is to be no contact with [defendant Huiras] outside of" the Our Family Wizard and that "[i]f the behavior continue[d] he [would] be put in jail." Id. Judge Cafferty stayed the sanctions and stated that future violation of the contempt would subject the plaintiff to thirty days in the Racine County Jail. Id. On September 21, 2022, Judge Cafferty lifted the stay of contempt and found that the plaintiff's violations of the court's orders constituted harassment. Id. Judge Cafferty noted that the court had "ordered Mr. Huiras to stop harassment

9

several times." Id. The docket entry states the following regarding Judge Cafferty's finding of contempt: "This is a non summary contempt, he may purge for $1500. Will go into custody and can post, will go to atty fees to Atty Grundberg." Id. The plaintiff provided a copy of the transcript of this September 21, 2022 hearing. See Dkt. No. 34 at 7–74.

## IV.    Motions to Dismiss

### A.    Interference with an Ongoing Family Law Case

As the court noted when it dismissed the plaintiff's first federal case, there is an overarching problem with all the plaintiff's claims against all the defendants. As the Seventh Circuit has explained, there are a number of "abstention" doctrines that allow, and sometimes require, a federal court to "decline to exercise its jurisdiction where doing so would intrude upon the independence of the state courts and their ability to resolve the cases before them." J.B. v. Woodard, 997 F.3d 714, 721–22 (7th Cir. 2021) (quoting SKS & Assocs., Inc. v. Dart, 619 F.3d 674, 677 (7th Cir. 2010)). Each of these abstention cases—Colo. River Water Conservation Dist. v. U.S., 424 U.S. 800 (1976); Younger v. Harris, 401 U.S. 37 (1971); Burford v. Sun Oil Co., 319 U.S. 315 (1943); R.R. Comm'n of Tex. v. Pullman Co., 312 U.S. 496 (1941); Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923)/District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983)—implicates "(in one way or another and to different degree) underlying principles of equity, comity, and federalism foundational to our constitutional structure." Id.

Pullman abstention requires a federal court to abstain from exercising its jurisdiction "where 'the resolution of a federal constitutional question might be obviated if the state courts were given the opportunity to interpret ambiguous state law.'" Int'l Coll. of Surgeons v. City of Chi., 153 F.3d 356, 365 (7th Cir.

1998) (quoting Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 716–17 (1996)).

Pullman abstention is not a perfect fit; it is not clear that the complaint raises any federal constitutional questions, or that the Racine County family court case involves any ambiguous state law. A federal court should exercise Burford abstention when it is asked to decide "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar," Quackenbush, 517 U.S. at 726–27 (quoting New Orleans Pub. Serv., Inc. v. Council of New Orleans, 491 U.S. 350, 361 (1989)), or when it is asked to conduct a review that "would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern," id. The complaint does not ask this federal court to decide difficult questions of state law that affect broad-reaching public policy problems or to disrupt state efforts to establish coherent public policy.

Younger abstention "generally requires federal courts to abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings." FreeEats.com, Inc. v. Indiana, 502 F.3d 590, 595 (7th Cir. 2007).

> . . . *Younger* and its progeny 'require federal courts to abstain from enjoining ongoing state proceedings that are (1) judicial in nature, (2) implicate important state interests, and (3) offer an adequate opportunity for review of constitutional claims, (4) so long as no extraordinary circumstances—like bias or harassment—exist which auger against abstention."

Id. at 596 (quoting Majors v. Engelbrecht, 149 F.3d 709, 711 (7th Cir. 1998)). The relief the plaintiff requests—that the court enjoin the ongoing family court proceedings in Racine County—satisfies the Younger abstention factors. The Racine County case is judicial in nature. It implicates important state interests—the state's compelling need to protect children. See Doe v. Heck, 327

11

F.3d 492, 520 (7th Cir. 2003) (quoting <u>Brokaw v. Mercer Cty.</u>, 235 F.3d 1000, 1019 (7th Cir. 2000)). It offers an adequate opportunity for review of constitutional claims—the plaintiff has the opportunity to challenge the state court's rulings both during the pending case and by appeal once it is concluded. Although the plaintiff does not agree with the state court's rulings, Attorney Grundberg's advocacy or the Racine County jail's performance of its duties, there is no evidence that the state proceedings were brought for the purpose of bias or harassment.

The Seventh Circuit considered similar facts in <u>J.B. v. Woodard</u>; the plaintiff in that case filed a federal lawsuit while his child custody dispute was ongoing, challenging actions of the department of children and family services employees in that case. <u>Woodard</u>, 997 F.3d at 718–19. Noting this timing, the Seventh Circuit was left "with the clear and unmistakable impression that [the plaintiff] seeks a favorable federal court judgment so that he can use that judgment to influence ongoing state court decision making." <u>Id.</u> at 721. The court found that the judgment the plaintiff sought from the federal court "runs contrary to the equity, comity, and federalism principles underlying our abstention doctrines," and concluded that the district court correctly abstained. <u>Id.</u>

> It is not enough for [the plaintiff] to invoke § 1983 and point to his constitutional right to familial association. He cannot compel the adjudication of claims that would inject a federal court into a contested and ongoing family court custody dispute. Yet that is precisely what is going on. [The plaintiff] came to federal court to go on the offensive—to use a favorable federal court judgment in state court to influence the state judge's parenting time decisions. Allowing that federal disruption and interference would offend the principles on which the abstention doctrines rest. [The plaintiff] seeks a level of intrusion by the federal courts that is 'simply too high.' [*Courthouse News Serv. v. Brown*, 908 F.3d 1063] at 1074 [(7th Cir. 2018)]. Exercising federal jurisdiction over his claims

would "reflect a lack of respect for the state's ability to resolve [these issues] properly before its courts." *SKS & Assocs.* [*Inc. v. Dart*], 619 F.3d [674] at 679 [(7th Cir. 2010)].

Id. at 722.

That conclusion is even more warranted here. The plaintiff has asked this court to *enjoin* the Racine County proceedings altogether—that appears to require abstention under Younger. He also appears to have come to federal court to obtain a judgment that will influence the defendants' behavior in the state case, which seems to require the kind of abstention described in Woodard. Because the state-court case is ongoing, "[t]he adjudication of [the plaintiff's] due process claims threaten interference with and disruption of local family law proceedings—a robust area of law traditionally reserved for state and local government—to such a degree as to all but compel the federal judiciary to stand down." Woodard, 997 F.3d at 723 (citing DuBroff v. DuBroff, 833 F.2d 557, 561 (5th Cir. 1987)). "Put most simply, 'federal courts may decline to exercise jurisdiction where denying a federal forum would "clearly serve an important countervailing interest," including "regard for federal-state relations."'" Id. (quoting Courthouse News Serv., 908 F.3d at 1071).

The court must decline to exercise its jurisdiction over the plaintiff's case for these reasons. In an abundance of caution, however, the court will explain how it would have addressed the defendants' other arguments, had it been able to exercise its jurisdiction.

B.    Rooker-Feldman

Defendants Cafferty and Racine County assert that the plaintiff's claims are barred by the Rooker-Feldman doctrine. See Dkt. Nos. 27 at 6–9, 29 at 4–5. "The *Rooker-Feldman* doctrine precludes federal courts from deciding cases brought by state-court losers complaining of injuries caused by state-court

judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Andrade v. City of Hammond, 9 F.4th 947, 949 (7th Cir. 2021) (internal citations omitted) (quoting Hemmer v. Ind. State Bd. of Animal Health, 532 F.3d 610, 613 (7th Cir. 2008)). "The rationale for the doctrine is that no matter how wrong a state court judgment may be under federal law, only the Supreme Court of the United States has jurisdiction to review it." Sykes v. Cook Cty. Circuit Court Prob. Div., 837 F.3d 736, 742 (7th Cir. 2016) (citing Brown v. Bowman, 668 F.3d 437, 442 (7th Cir. 2012)).

"To determine whether the *Rooker-Feldman* doctrine bars jurisdiction, [courts] apply a two-step analysis." Andrade, 9 F.4th at 950. First, the court must "consider whether a plaintiff's federal claims are 'independent' or, instead, whether they 'either "directly" challenge a state court judgment or are inextricably intertwined with one.'" Id. (quoting Swartz v. Heartland Equine Rescue, 940 F.3d 387, 391 (7th Cir. 2019)). "If they are 'independent' claims, the *Rooker-Feldman* doctrine does not preclude federal courts from exercising jurisdiction over them." Id. If the claim directly challenges or is "inextricably intertwined" with the state court judgment, then the court moves on to step two and must "determine 'whether the plaintiff had a reasonable opportunity to raise the issue in state court proceedings.'" Id. (quoting Jakupovic v. Curran, 850 F.3d 898, 902 (7th Cir. 2017)). "Only if the plaintiff did have such an opportunity does *Rooker-Feldman* strip federal courts of jurisdiction." Id.

"The doctrine only applies . . . where 'the losing party in state court filed suit in federal court *after the state proceedings ended* . . . .'" TruServ Corp. v. Flegles, Inc., 419 F.3d 584, 591 (7th Cir. 2005) (emphasis in original) (quoting Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 291 (2005)). See

Kowalski v. Boliker, 893 F.3d 987, 995 (7th Cir. 2018) (finding Rooker-Feldman did not bar the case because "the state court had not rendered a judgment before the district court proceedings began"); Jones v. Brennan, 465 F.3d 304, 305 (7th Cir. 2006) (concluding the doctrine was inapplicable because "[t]he plaintiff filed her suit before the litigation in state court . . . was completed"). "[P]roceedings end for *Rooker-Feldman* purposes when the state courts *finally* resolve the issue that the federal court plaintiff seeks to relitigate in a federal forum." Parker v. Lyons, 757 F.3d 701, 706 (7th Cir. 2014) (emphasis in original) (citation omitted).

Although the plaintiff's claims directly relate to Racine County Circuit Court Case No. 2021FA000592, the case was ongoing at the time he filed his complaint and still is ongoing. Because Rooker-Feldman does not apply to state court cases that have not yet resulted in a final judgment, if the court had been able to exercise jurisdiction it would not have granted the defendants' motions to the extent they are based on the Rooker-Feldman doctrine.

C.    Defendants Grundberg and Nicole Huiras (Dkt. No. 3)

Defendants Grundberg and Nicole Huiras seek dismissal under Federal Rule of Civil Procedure 12(b)(6), arguing that the complaint fails to state a claim upon which relief can be granted. Dkt. No. 4 at 1–4. Grundberg and Nicole Huiras assert they cannot be sued under 42 U.S.C. §1983 because they are not state actors and the complaint does not plead facts demonstrating they have violated the plaintiff's constitutional rights. Id. at 2–4. Grundberg and Nicole Huiras also argue that although the complaint "generally alleges misrepresentation as a topic heading," it does not identify any statements as misrepresentation. Id. at 3–4.

15

"Section 1983 creates a federal remedy against anyone who, under color of state law, deprives any citizen of the United States . . . of any rights, privileges, or immunities secured by the Constitution and laws." St. Anthony Hosp. v. Eagleson, 40 F.4th 492, 502 (7th Cir. 2022) (internal quotations omitted) (quoting Planned Parenthood of Ind., Inc. v. Comm'r of Ind. State Dep't of Health, 699 F.3d 962, 972 (7th Cir. 2012)). Defendant Grundberg is not employed by the state; she is a private lawyer employed by Nicole Huiras. Nicole Huiras is not employed by the state; she is a private citizen and the petitioner in the plaintiff's state court family law case. "Private persons are considered state actors—that is, they are deemed to have acted under color of state law and thus face § 1983 liability—in certain limited circumstances." Camm v. Faith, 937 F.3d 1096, 1105 (7th Cir. 2019). "The first is where the [S]tate effectively directs or controls the actions of the private party such that the [S]tate can be held responsible for the private party's decision. . . . The second situation is when the [S]tate delegates a public function to a private entity." Id. (alterations in original) (quoting Payton v. Rush–Presbyterian-St. Luke's Med. Ctr., 184 F.3d 623, 628 (7th Cir. 1999)). Additionally, "[a] private person acts under color of state law when she is a 'willful participant in joint action with the State or its agents.'" L.P. v. Marian Catholic High Sch., 852 F.3d 690, 696 (7th Cir. 2017) (quoting Dennis v. Sparks, 449 U.S. 24, 27 (1980)). Put another way, a private person may be liable under §1983 "for conspiring with a state actor to violate the constitutional rights of another." Maniscalco v. Simon, 712 F.3d 1139, 1145 (7th Cir. 2013). "The plaintiff must identify a sufficient nexus between the state and the private actor to support a finding that the deprivation committed by the private actor is 'fairly attributable

16

to the state.'" Marian Catholic High Sch., 852 F.3d at 696 (quoting Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982)).

The plaintiff has not demonstrated, nor does the record reveal, that the State of Wisconsin either directed or controlled Grundberg's or Nicole Huiras's actions or that it delegated its functions to either defendant. The complaint does not allege that either Grundberg or Nicole Huiras conspired with a state actor. The plaintiff asserts that Nicole Huiras "filed a meritless claim for harassment via a sworn and signed affidavit," that Grundberg "proposed a criminal contempt order based on multiple meritless claims" and that Judge Cafferty found the plaintiff in contempt. Dkt. No. 1 at 5. Beyond these bare, factual allegations, the plaintiff has not described how either Grundberg or Nicole Huiras "conspired" with Judge Cafferty or any other state actor. As to Grundberg, an attorney has an ethical obligation to abide by her client's decisions concerning the objectives of representation and take whatever action is impliedly authorized to pursue those objectives. SCR 20:1.2(a). The plaintiff's claims amount to an argument that Grundberg zealously represented her client and convinced the judge to find the plaintiff in contempt for harassment on her client's behalf. That is not a conspiracy. That is what lawyers are supposed to do.

The complaint alleges that Grundberg and Nicole Huiras made "meritless and misrepresenting claim[s] . . . in sworn and signed affidavits." Dkt. No. 1 at 1, 5. See Dkt. No. 9-1 at 3–5. But the plaintiff has pled no facts demonstrating that Nicole Huiras's affidavit was false. To the contrary, the plaintiff himself has provided this court with exhibits supporting the statements made in the affidavit. See Dkt. No. 9-1 at 6–18; Dkt. No. 9-2. Although the complaint quotes SCR 20:3.1 from the Wisconsin Supreme Court Code of Conduct of Attorneys

17

regarding meritorious claims and contentions, it does not demonstrate how defendant Grundberg has violated this rule. See Dkt. No. 1 at 7. And this court does not decide whether Wisconsin lawyers violate the rules of ethics; the Wisconsin Supreme Court makes those decisions. If the court had been able to exercise its jurisdiction, it would have granted Grundberg's and Nicole Huiras's motion and dismissed them as defendants.

      D.    <u>Judge Cafferty (Dkt. No. 28)</u>

Judge Cafferty argues that the plaintiff's claims against her are barred by abstention, the <u>Rooker-Feldman</u> doctrine and judicial immunity. Dkt. No. 29 at 3–6. The court previously discussed abstention and <u>Rooker-Feldman</u>, but it has not yet discussed judicial immunity.

"Judges are generally entitled to absolute immunity from suit for their judicial conduct." <u>Schneider v. Cty. of Will</u>, 366 F. App'x 683, 684 (7th Cir. 2010) (citations omitted). "Judges have immunity for judicial acts even if they act erroneously, maliciously, or in excess of their authority . . . ." <u>Bertha v. Hain</u>, 787 F. App'x 334, 338 (7th Cir. 2019). "The doctrine protects judges from the fear of future litigation brought by disgruntled litigants unhappy with judicial decision-making." <u>Agrawal v. Pallmeyer</u>, 313 F. App'x 866, 867 (7th Cir. 2009). Judicial immunity also extends to claims for injunctive relief. <u>File v. Martin</u>, 33 F.4th 385, 391 (7th Cir. 2022). The legislature amended 42 U.S.C. §1983 to expressly bar claims for prospective relief against a judicial officer acting in his or her judicial capacity. <u>Id.</u> Section 1983 states that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. §1983.

18

There are two situations in which the doctrine does not apply: "Judicial immunity insulates judges from being sued except when a plaintiff sues a judge for (1) 'nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity,' or (2) 'actions, though judicial in nature, taken in the complete absence of all jurisdiction.'" Cossio v. Tourtelot, 725 F. App'x 406, 410 (7th Cir. 2018) (quoting Mireles v. Waco, 502 U.S. 9, 11–12 (1991)). See also Polzin v. Gage, 636 F.3d 834, 838 (7th Cir. 2011) ("A judge has absolute immunity for any judicial actions unless the judge acted in the absence of all jurisdiction.").

All the plaintiff's claims against Cafferty arise from her judicial conduct. Judge Cafferty is a circuit court judge in Racine County. https://www. racinecounty.com/departments/clerk-of-circuit-court/court-information/ court-officials. She has jurisdiction to preside over the family court case in which the plaintiff is a party. The allegations in the complaint assert that the judge abused her discretion or otherwise violated the plaintiff's rights when making various decisions during the plaintiff's divorce and custody proceedings, particularly her decision to hold the plaintiff in contempt for repeatedly violating court orders and harassment. See Dkt. No. 1 at 1, 4–5. The plaintiff has not alleged that Judge Cafferty violated a declaratory decree or that declaratory relief was unavailable. If the court had been able to exercise its jurisdiction, it would have granted Judge Cafferty's motion and dismissed her as a defendant.

E.    Racine County (Dkt. No. 26)

Defendant Racine County asserts the court should dismiss the complaint under Rule 12(b)(6) because it fails to state a claim upon which relief may be granted and the plaintiff has not alleged a claim against Racine County under Monell v. Department of Social Services, 436 U.S. 658 (1978). Dkt. No. 26 at 3–

19

6. Racine County argues that although the complaint names it as a defendant, the complaint does not state any factual allegations that implicate Racine County or demonstrate how Racine County is liable. Racine County asserts that the mere fact that the plaintiff "generally claims to have been falsely imprisoned at the Racine County Jail without any additional facts supporting such a general statement does not sufficiently establish that Racine County has violated any of Plaintiff's rights." Id. at 3.

The only facts pled by the complaint relating to Racine County involve the plaintiff's treatment at the Racine County Jail. The complaint states that the plaintiff was "falsely imprisoned" and questions why it took "8 hours for a signed court order to get to the jail for [him] to sign a bond and pay $1500 to leave the jail[.]" Dkt. No. 1 at 1. In the complaint's statement of facts, the only relevant portion is the last paragraph:

> On September 21st, 2022 I was taken to jail custody near 12:30pm. I was stripped, searched and put until [sic] a holding cell with as many as 8 people in a very small and filthy, dirty room for over 8 hours. I did not eat and was not allowed to get my attorney's phone number from my wallet.

Id. at 5.

The plaintiff's opposition to Racine County's motion to dismiss adds allegations not pled in his complaint. The plaintiff provides a picture of his Discover Card statement showing a $1,611.75 charge from the Racine County Jail and questions why the fine was "excessively and unnecessarily more than $1500 as specified by the court . . . ." Dkt. No. 33 at 1–2. The plaintiff then states additional allegations:

> Why did this Racine County Corporate Enterprise obtain the ability to profit from the injury of my fundamental liberty interests? It appears that Racine County sent this money to Defendant Nicole Huiras in their corporate and profiting scheme that bullies and coerces non-custodial parents into submitting to their unlawful

20

orders. . . . Defendant Racine County, Wisconsin also took the cash from my wallet and refused to return the money to me after I was released.

Id.

Even if the court were able to exercise its jurisdiction, it would be required to dismiss Racine County. Section 1983 allows a plaintiff to sue a "person" who has violated his civil rights, and a county is not a "person" amenable to suit under §1983. Cullen v. Saddler, 668 F. App'x 666, 657 (7th Cir. 2016) (citations omitted). "Claims against municipalities for constitutional violations are governed by the principles of *Monell v. Department of Social Services*, 436 U.S. 658 (1978), and must show that the municipality had a policy, practice, or custom that caused the constitutional violation." Bahr v. Winnebago Cty., No. 16-C-1034, 2018 WL 3474072, at *2 (E.D. Wis. July 19, 2018) (citing Chatham v. Davis, 839 F.3d 679, 685 (7th Cir. 2016)). See also Perkins v. Milwaukee Cty., 781 F. App'x 538, 542 (7th Cir. 2019) ("*Monell* permits the liability of a municipal corporation (or its functional equivalent) only if its own policy or custom caused the violation."); Colbert v. City of Chi., 851 F.3d 649, 660 (7th Cir. 2017) ("In order to state a § 1983 claim against a municipality, the complaint must allege that an official policy or custom not only caused the constitutional violation, but was 'the moving force' behind it.") (quoting Estate of Sims ex rel. Sims v. Cty. of Bureau, 506 F.3d 509, 514 (7th Cir. 2007)). Plaintiffs must assert that the municipality is "liable under § 1983 for violating a plaintiff's civil rights through '(1) an express municipal policy; (2) a widespread practice constituting custom or usage; or (3) a constitutional injury caused or ratified by a person with final policymaking authority.'" Darchak v. City of Chi. Bd. of Educ., 580 F.3d 622, 629 (7th Cir. 2009) (quoting Simmons v. Chi. Bd. of Educ., 289 F.3d 488, 494 (7th Cir. 2002)). The

complaint does not allege that Racine County had a policy, practice or custom that caused the alleged constitutional violations. If the court had been able to exercise its jurisdiction, it would have granted Racine County's motion and dismissed it as a defendant.

## V.   Other Motions

If the court had been able to exercise jurisdiction over this case, it would have denied the plaintiff's motion for a preliminary injunction. Dkt. No. 15. For the very reason that the court cannot exercise jurisdiction, it cannot issue an order dismissing a state court case. "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction or to protect or effectuate its judgments." 28 U.S.C. §2283. There is no act of Congress authorizing this court to do what the plaintiff asks. It is not necessary for this court to stay the state court's orders to aid its jurisdiction or to effectuate or protect its judgments. The plaintiff has a remedy if he disagrees with Judge Cafferty's rulings. "If a state court errs in its rulings, . . . the traditional remedy has been some form of appeal, . . . not the entry of an *ex ante* injunction preventing the state court from hearing cases." Whole Woman's Health v. Jackson, ___ U.S. ___, 142 S. Ct. 522, 532 (2021).

Finally, because the court cannot exercise its jurisdiction over this case, it will deny as moot defendants Grundberg and Huiras's motion for attorney's fees. Dkt. No. 17. The court similarly will deny as moot the plaintiff's motion to stay the case. Dkt. No. 38.

## VI.   Conclusion

The court **DENIES AS MOOT** defendants Huiras and Grundberg's motion to dismiss. Dkt. No. 3.

The court **DENIES AS MOOT** defendant Racine County's motion to dismiss. Dkt. No. 26.

The court **DENIES AS MOOT** defendant Cafferty's motion to dismiss. Dkt. No. 28.

The court **DENIES AS MOOT** the plaintiff's motion for preliminary injunction. Dkt. No. 15.

The court **DENIES AS MOOT** defendants Huiras and Grundberg's motion for attorney's fees. Dkt. No. 17.

The court **DENIES AS MOOT** the plaintiff's motion to stay the case. Dkt. No. 38.

The court **ORDERS** that this case is **DISMISSED WITH PREJUDICE** because the court lacks subject matter jurisdiction. The clerk will enter judgment accordingly.

Dated in Milwaukee, Wisconsin this 23rd day of February, 2023.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**

23